(Cuyahoga Co., O., Common Pleas.)
February, 1899.

In the Matter of the ascertainment and assessment of damages caused to the owners of private property by the transfer of the charge and control of a part of Euclid Avenue from the Council of the City of Cleveland to the Board of Park Commissioners of said city.

———

(1.) The act of April 5, 1893, creating the board of park commissioners for Cleveland, gives that board exclusive charge, supervision and control of the parks, park entrances and park drive ways, now belonging to such city or in its control and of all such property as may thereafter be acquired for parks and for park entrances and park driveways connecting or leading to and from such parks, etc. The park commissioners passed a resolution whereby they resolved to take charge and control, and improve for the purposes of a park driveway, that portion of Euclid avenue from Brownell street about four miles in length to Wade park Boulevard which leads into Wade park, and the city council by resolution relinquished the control of that portion of Euclid avenue to the board of park commissioners, and the city solicitor instituted proceedings to assess the damages which property owners on that part of Euclid ave would sustain by such change. Held:

Under the powers conferred by the act on the park commissioners, they are authorized to take that part of Euclid avenue for such purposes, and the legislature had power to confer such power.

(2). The resolution of the city council is not of such character as would make it necessary that it should be submitted to the mayor for approval under the statute.

(3). This change of the control of the avenue involves such changes in the rights of the property owners in the avenue as entitles them to damages, to be ascertained by a jury.

———

ONG, J.

The questions to be determined by the court in this proceeding arise upon a demurrer interposed by the city of Cleveland to the answer of J. K. and W. C. Millard, filed in response to the notice given by the city, of its application to have damages determined and assessed in this proceeding.

The applicant. the city of Cleveland, being a municipality by virtue of the laws of the state, has the control and management of all the streets, thoroughfares and alleys within the corporate limits, and, among others, is

the street or avenue known as Euclid avenue.

In 1893, the legislature of Ohio, by an act duly passed, created what is designated in the statute as "A board of park commissioners, consisting of five members who shall be electors of the city for which they are appointed, who, by the terms of the act, shall have exclusive charge, supervision and control of the parks, park entrances, and park driveways, now belonging to such city or in its control, and of all such property as may hereafter be acquired for parks and for park entrances and park driveways connecting or leading to and from such parks, and such board of park commissioners shall have power to acquire and hold property in the name of the city, by purchase or condemnation, for public parks and for park entrances and park driveways connecting and leading to or from such parks, to receive gifts, donations and devises of land and other property for public parks, park entrances or park driveways, on behalf of the city, in the name of the city; to lay out, construct, and improve with walks, drives, roads and bridges, shelter-houses, and other improvements, the public parks, park entrances and park driveways held by it or under its control; to enter into contracts for the construction and improvement of such parks, park entrances and park drivewys; to adopt rules and regulations regulating the use of the same, and the travel and traffic thereon, and to prevent disorder and improper conduct within the precincts of any park or park entrance or park driveway."

Under this act, the board of park commissioners in the city of Cleveland, exercising the authority vested in them by virtue of the entire act, to a part of which I have just referred, have constructed many beautiful parks and driveways in and about the city of Cleveland, and are continuing to construct, build, and maintain different parks, entrances and driveways to what is known as the *system of parks* in and about the city of Cleveland.

Prominent among the park drive-

ways and parks, is that known as Wade park, which is a park lying north of Euclid avenue in the eastern portion of the city of Cleveland. The board of park commissioners, under and by virtue of the authority vested in them in the section I have just read, have deemed it advisable and for the purposes of a better and more extended entrance to Wade park boulevard, that it should have the control of Euclid avenue from Brownell street eastward to the entrance to the boulevard or Wade park,—making so much of the avenue, about four miles in length, a park entrance and park driveway connecting with or leading to the boulevard or Wade park. And, in keeping with such view and judgment of the board of park commissioners, they did (the exact date I do not now have before me) adopt the following resolution:

"Resolved: That this board take charge of, control and improve for the purposes of a park driveway, all that portion of a certain street in the city of Cleveland, county of Cuyahoga and state of Ohio, known as Euclid avenue," (here follow a description of that portion of the street or avenue, which it is sought to take charge of, control and improve as a park driveway), being all that portion, in fact, of Euclid avenue between the intersection of Brownell street and the east side of the entrance of Euclid avenue to Wade park or Wade park boulevard.

After the adoption of that resolution, the city of Cleveland which has the control, management and government of all the streets including Euclid avenue, adopted the following resolution:

"Resolved: That the consent of this council be and is hereby given to the board of park commissioners to take charge of, control and improve for the purposes of a park driveway, all that portion of a certain street in the city of Cleveland,"—and then again follows a description of that certain portion of Euclid avenue to which I have just referred.

After the adoption of the two resolutions, then, as provided by the stat-

ute, the city of Cleveland filed in this court a paper-writing designated "A petition," and entitled on the dockets of this court, as follows: "In the matter of the ascertainment and assessment of damages caused to the owners of private property injured by the transfer of the charge and control of a part of Euclid avenue, from the council of the city of Cleveland to the board of park commissioners of said city." In which petition the city sets forth the fact that it is a municipal corporation of the second grade and first class, duly organized under the laws of the state of Ohio. It further says, that it acted by and through its board of park commissioners, which commission was duly created by the legislature of the state, April 5, 1893, by an act entitled "An act to provide a board of park commissioners," etc.

Then the city avers the fact that for the purposes of taking charge of, controlling and improving that portion of Euclid avenue to which I have referred, and, after setting forth the adoption of the two resolutions to which the court has also referred, the city proceeds to say: "And for the purpose of ascertaining what damage, if any, may be caused by the action of this board in taking charge of, controlling and improving said portion of said street, the corporation counsel of the city of Cleveland is requested to apply to the court of common pleas of Cuyahoga county, by proper proceedings, and to cause notice thereof to be given as required by law."

And after a further reference to the resolutions and the benefits thereof to the system of parks and park driveways, the city concludes its petition by praying that "after due and legal notice of the filing, pendency, and prayer of this petition, has been given, that this honorable court will proceed to hear, ascertain, determine and assess the damage, if any, caused by the said transfer of the charge and control of said part of the said avenue from the council of said city to the board of park commissioners thereof, to any person or persons owning or having any interest therein and private property injured thereby, and prays for any

other relief that it may be entitled to in the premises.''

In response to the petition of the city of Cleveland, a very large number of owners of property abutting on Euclid avenue, have filed their answers in this proceeding and, among others, is J. E. and W C. Millard.

The first defense in their answer (Millards') is, that the court is wholly without jurisdiction in this case, because, they say, the act of April 5, 1893, creating the board of park commissioners, is unconstitutional.

The second defense is, they say, that Euclid avenue and the part thereof described in the petition, is a county road and part of a continuous highway leading from the public square in the city of Cleveland to the easterly limits of the city of Cleveland, and so on to the easterly limits of the county of Cuyahoga.

For their third defense, these defendants say, that the board of park commissioners, under the act of April 5, 1893, have no authority to take possession of the portion of Euclid avenue described in the petition, except for the purposes of a park entrance or park driveway. And these defendants say that the part of Euclid avenue, described in the petition, is located wholly outside of any park, and is, therefore, not a park driveway, and the same is not a park entrance but, on the contrary, is a public highway nearly four miles in length, extending from Wade park at its easterly terminus, westerly therefrom towards the central portion of the city of Cleveland for the said entire distance of about four miles.

For their fourth defense, they say that the resolution of the council, set forth in the petition, has never been presented and duly certified by the clerk to the mayor of the city of Cleveland for his approval, and that the said resolution has never in any form been presented to the mayor of the city of Cleveland for approval, and that until said resolution has been presented, duly certified by the clerk, to the mayor for his approval, the same cannot take effect.

For their fifth defense, they say by way of claim for damages, that if the court shall entertain jurisdiction in this case to assess damages to the owners of property abutting on Euclid avenue between the points named in the plaintiff's petition, then these defendants are owners as tenants-in-common of the following described property. Then they describe their property owned on the avenue.

They further say that they are engaged as partners in carrying on the undertaking business and, in connection therewith, have constructed buildings and improvements on said premises, of the value of thousands of dollars; that the value of their land and the improvements thereon, depends upon the use of said property for business purposes, and that if the care, custody and control of the same is to be given to the board of park commissioners as provided for in the resolutions, with power to restrict and control travel thereon and to exclude business, traffic and the transportation of products, merchandise, street cars, etc., then it will be impossible for these defendants to use said premises in connection with their business, and that the value of the premises and the improvements thereon will be diminished in the sum of three thousand dollars. Wherefore, they pray that in any assessment of damages herein, they may have awarded to them the sum of three thousand dollars..

Now; to the first, third, fourth and fifth defenses, the city of Cleveland interposes a demurrer, and upon that demurrer the questions, which are many and very difficult to solve, so far as the court is concerned, arise.

As to the first defense, raising the constitutionality of the act creating the board of park commissioners—by agreement of counsel that question was not presented or argued at this time to this branch of the court, for the reason that the constitutionality of the act is already before the supreme court in another or like proceeding from this county, and, as I understood counsel, I was not expected to pass upon that question. If, however, it is necessary to do so in or-

der that the question may be fully presented by the record in this case, I should sustain the demurrer to the first defense. This, however, is without any particular consideration of the subject and without argument.

The second defense, which is that Euclid avenue is a part of the county road, and that the municipal council has no control of it, is not before the court. So as that it leaves for the court's determination the sufficiency of the third, fourth and fifth defenses as set forth in the answer of J. K. and W. C. Millard. I should say here that the same question is made, and some additional questions by the many answers filed in the case, but counsel on both sides have seen fit to submit the matter at this time to this branch of the court upon the three defenses referred to.

The brief statement of the facts of this proceeding as now made by the court, and the reference to the different acts of the Legislature, together with the vast interest conferred in one of the greatest thoroughfares in the city of Cleveland, readily suggests the difficult questions as well as the vital interest it is to the city and all concerned. And while that is true, the court is not unmindful of the fact that the interest of the respective parties was represented and argued by those among the ablest counsel at this bar or, indeed, in the state. Some three days were consumed in the presentation and argument of the questions involved. The arguments and briefs submitted have, of course, been of indispensable aid and assistance to the court in determining the questions submitted. And, in determining the issues, the court is disposed to take them up in the order in which they were argued, and pass upon them each in a measure by itself. Hence the first proposition to be considered and determined, is the demurrer to the third defense which is that Euclid avenue is neither a park entrance nor a park driveway, and, therefore, the board of park commissioners in law have no right to exercise any control over that portion of the avenue described in the petition for the reason

that Euclid avenue is neither a park entrance nor a park driveway.

The fact, however, is conceded by the pleadings, that Wade park abuts or intersects at the northerly terminus of the northerly side thereof, of Euclid avenue, and that Wade park, a park within the limits of the city of Cleveland, has through and in it a park driveway constructed and controlled by the board of park commissioners, and that all that portion of the avenue, described in the petition, leads to and by the entrance of Wade park. But it is contended, notwithstanding that state of facts, that it is not, as alleged in the answer, a park entrance or a park driveway.

We think that the demurrer to the third defense must be sustained; and, in sustaining the demurrer, we are not unmindful of the fact that it is giving to the board of park commissioners almost an unlimited power and right to take, hold and control streets and public thoroughfares connecting and leading to or from such parks. But the legislature, doubtless, in enacting section 2, of the act creating the board of park commissioners, while it vested by the terms of the act the board with such unlimited authority and power, believed that it would be exercised with care, judgment, and with due regard to vested rights in such streets and public thoroughfares. But whatever may be said as to the expectation of the law-making power of the state, it nevertheless used the unqualified language in the act, as follows:

"Said board of commissioners shall have exclusive charge, supervision and control of the parks, park entrances and park driveways now belonging to such city or in its control, and of all such property as may hereafter be acquired for parks and for park entrances and park driveways connecting or leading to and from such parks."

There can be no question in the mind of the court as to the power conferred upon this board by the language just quoted. That Euclid avenue connects with, leads to and from Wade park and Wade park boulevard, there is no question.

It is said, however, by the defend-

ants, in their answer, that Euclid avenue lies entirely outside of Wade park, but that it connects with the boulevard—that it is intersected by the boulevard, leads to and from.it, is not denied.

And, therefore, under the statute, we are clearly of the opinion that the board of park commissioners have authority in law, so far as the third defense is concerned, to take charge of, control and manage Euclid avenue or the portion thereof described in the petition, as a park driveway and entrance to Wade park and for that reason, the demurrer to the third defense is well taken.

This brings us to the consideration of the fourth defense in the answer, or rather the sufficiency thereof, and it is in brief, that the council resolution, consenting to the transfer of the charge and control of Euclid avenue by the board of park commissioners, was not submitted to the mayor for his approval, and, therefore, the same is of no effect, and the board of park commissioners take no right by reason of the adoption thereof.

This question has been of no easy solution, and counsel for the defendants argued at great length and with much earnestness that the resolution, adopted by the city council, must, under the municipal law of the state, before it is effective, have been submitted to the mayor and approved by him; and they contend for this proposition because, they say, that, on March 16, 1891 the legislature of this state passed an act to provide for the more efficient government for cities of the second grade, first class, and by section 1, of the act it is provided, that is, in cities of the second grade of the first class, the legislative power and authority shall be vested in a council consisting of twenty members to be elected by districts, who shall serve for a term of two years. Section 2 provides that the members of the council shall be residents of their respective districts. And then section 3 provides: "Every legislative act of council shall be by ordinance, resolution or order. No ordinance, resolution or order, involving the expendi-

ture of money or the approval of a contract for the payment of money or of the purchase, sale, lease or transfer of property, or granting a franchise, or creating a right, or levying any tax, or fixing the rents to be charged for the supply of water, or imposing any fine, penalty or forfeiture, shall be passed until at least one week shall have elapsed after the same has been introduced and read in council; and every such ordinance, resolution or order which shall have passed the council, except such as provide for improvements or levying assessments to pay the costs and expenses of same, on recommendation of the board of control shall, before it takes effect, be presented, duly certified by the clerk, to the mayor of the city for his approval. Counsel contend that the resolution, adopted by the city council, was a resolution that created a right, and, therefore, is of no effect until it shall have the approval and signature of the mayor of the city. In other words, it is contended that such a resolution was necessary before the board of park commissioners would take the control of Euclid avenue and, that being true, that such an act created a right, to-wit: The right of the board of park commissioners to receive, hold and control the avenue, as described in the resolution.

If the city council by the adoption of this resolution within the meaning of the section of the statute to which I have just referred, created a right, then the position of counsel for defendant is tenable and the demurrer must be overruled.

What did the council of the city by that resolution do? The resolution itself defines most clearly the act, and the resolution reads: "Resolved: That the consent of this council be and it is hereby given to the board of park commissioners to take charge of, control, and improve, for the purposes of a park driveway, all that portion," etc. Did such consent and such act create a right, and vest in, the board of park commissioners, authority and control that they in no other manner could receive? Certainly not, in the judgment of the court, and for the

reason that the legislature of the state of Ohio had already created the right of the board to have control of Euclid avenue or any other street or public highway connecting or leading to and from such parks.

Again, this is not a transfer by the city, of Euclid avenue, to the board of park commissioners of the city, but it is a transfer of the control of Euclid avenue by the state through the legislature to the board of park commissioners, requiring, however, the consent of the city council by reason of the fact that the legislature of the state had heretofore given the control of all streets, alleys, and public highways within the municipality to the city council. And I think clearly, as contended by counsel for the city, that is the taking of the control of this street or avenue from the city council and placing it under the control of the board of park commissioners—another municipal agency.

As said by Judge Dillon: "In all civilized countries the duty of preserving safe and convenient highways to facilitate trade and communication between different parts of the state or community, is considered a governmental duty. This may be done by the government direct or through the agency of corporations created for that purpose. The right of public supervision and control over public highways results from the power and duty of providing and preserving them."

Hence the control of all the highways in the state rests with the state itself to be regulated by the legislature, and it is a function of government, but it is a power which the state may and does delegate to subordinate departments of government: to county commissioners, to township trustees, and to municipal authorities. All these authorities act in pursuance of this delegated power from the state.

This being true, the city council of the city of Cleveland in adopting its resolution consenting to release its control of the avenue, in the judgment of the court, created no right, as that term is used in the section of the statute relied upon by counsel for the defense.

The legislature of Ohio had vested the city council prior thereto, with a right, which right it possessed at the time the resolution was adopted, that of the control and supervision of Euclid avenue; but the city, by the act of relinquishing that right, which it did by the resolution adopted, in no manner gave birth to, or created a new independent right.

The act of the legislature making it necessary to secure the consent of the municipal authorities, is entirely affirmative in its character, and relates solely to the right and power of the board of park commissioners. The act provides: "That the board of park commissioners shall also have power, by a four-fifths vote, to take charge of, control and improve any public road, street, alleyway, or grounds of any kind, or any part thereof, for the purposes of a park entrance or park driveway, with the consent of the proper municipal authorities or of the other corporations or public officers or authorities owning or having charge thereof."

So as, that all that can be said of the act of the city council as provided for in the section just referred to, is, that, without such consent, the board of park commissioners are powerless to exercise the right created by and given to the board by the legislature of Ohio.

Hence the act of the city council is not the creation of a right, but is only its consent to the exercising of a right already created by the legislature.

And for the reason given, under the existing legislation of the state upon the subject under consideration, we hold that it was not necessary to have the mayor's approval and signature to the resolution adopted by the city council; that it did not create any right; that it was simply the relinquishment of a right heretofore exercised by the city council, which relinquishment was necessary before the board of park commissioners could exercise the right already created and vested in it.

The demurrer, therefore, to the

fourth defense, we think, is well taken, and will be sustained.

The questions presented by the demurrer to the fifth and last defense, present for determination a more difficult question in the mind of the court than either one of the two questions already passed upon.

The defendants for their fifth defense say, that if the court shall entertain jurisdiction in this case to assess damages, then, by reason of their ownership of the property and for the purposes heretofore referred to by the court and as pleaded by them that they are entitled to the sum of three thousand dollars.

The question is not so far as the demurrer is concerned, of course, one of assessing damages, but presents squarely the question as to whether or not, under all the facts averred in the petition and the answer and under the existing laws of the state, any damage can possibly come to, or be sustained by the defendants by reason of the transfer of the control of Euclid avenue, or that portion of Euclid avenue described in the petition, from the city council to the board of park commissioners.

It was very ably and earnestly urged by counsel for the city, that in law no damage by reason of the change of the control and management of this avenue, from the city council to the board of park commissioners, will be sustained by any of the abutting property owners on that portion of Euclid avenue described in plaintiff's petition.

While, on the other hand, counsel for the defendants, not only of J. K. and W. C. Millard, but of other defendants in the case, contend that if such proceedings are to be had and the purpose and intent of the resolution adopted be consummated, that then the free passage over Euclid avenue in the usual and ordinary course of trade and commerce will be materially limited, abridged, and interfered with, and that the abutting property owners will be materially damaged by reason of such limitation and restriction of travel, and that they are entitled to have that question heard and the amount of damages

fixed and determined under the constitution, by a jury of their countrymen. For they contend that it is, in fact, an appropriation of vested property rights in the abutting property owners.

It, therefore, becomes necessary to inquire to what extent the city council may control, restrict and limit the use of Euclid avenue, and what rights, if any, abutting property owners have acquired in the street and the thoroughfare under such existing regulations and control. And, on the other hand, what power of control, limitation and restriction, if any, the board of park commissioners would have over the street or Euclid avenue if control is given to them, and what property rights, if any, would be affected by the abutting property owners on such avenue.

As to the first proposition under section 2640, of the Revised Statutes of Ohio: "The council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds, and bridges within the corporation, and shall cause the same to be kept open and in repair and free from nuisance."

The act just referred to, has been many times before the courts of the state for construction in one day or another, but in no case has it been held that the city council under this act may in any manner limit or restrict the kind or amount of travel or traffic along such streets, alleys, or public thoroughfares, so long as the same do not constitute or amount to a nuisance.

Therefore, all rights acquired and vested in the abutting property owners of Euclid avenue, have been acquired and vested while the avenue was under the control and management of a municipal agency, the power of which was to keep the street open, in repair, and free from nuisance. In other words, by authority delegated to the city council by the state, Euclid avenue fell within the definition of Highways, as given by Dillon on Municipal Corporations, which is, "That the highways of the world are open to all people. The people of the entire

world not only may but must use them, and it is the duty of the government not only to provide public highways, but to maintain and control them.''

With the control of Euclid avenue thus vested in the city council, what rights has the abutting property owner acquired?

First. That the grade of the avenue has been fixed.

Second. That the sidewalk and entrances to all abutting property have been adjusted and arranged in keeping with the grade.

Third. That different portions of the avenue, as described in the petition, have been occupied for years as business property. Large and costly improvements have been made for the carrying on of different kinds of commercial as well as manufacturing business.

Fourth. Much of the property abutting on Euclid avenue within the last ten years, has been held, managed and controlled with a view to converting residences into business property both of a manufacturing and of a commercial nature. Much expense has been incurred with the view of converting it into business property—and all with the knowledge on the part of the owner, of a vested right that he has in the street, that it will be maintained, kept in repair, and free from nuisance, open to the entire travel of the world, open to the transporting over it of all kinds of commerce in large or small quantities; that, indeed, the only restriction in the use of the avenue is that it shall be kept free from nuisance. All these rights by abutting property owners have been acquired and are absolutely vested rights to-day in the property owner under the law of the state, which, gives to the municipality the control over, and management of this thorough-fare. What power, differnt, if any, will the board of park commissioners have over the avenue if it accepts under the resolution adopted by the council, the management and control of the avenue for a park entrance or park driveway?

Now, as contrasted with section

2640, Rev. Stat., let us see the power, again, of the board of park commissioners. Section 2, of the act provides: ''That the board of park commissioners shall have power to adopt rules and regulations regulating the use of the driveways and park entrances, and the travel and traffic thereon; and to prevent disorder and improper conduct within the precincts of any park entrance or park driveway. Said board of park commissioners shall also have power to agree wi h the owner or owners of any street railway occupying any part of any park entrance or park driveway or any public road or street which may be placed under the charge of said board of park commissioners as provided in section 8, of this act, for the removal of any street railway therefrom, which, in the opinion of said board of park commissioners, my interfere with the use of such park entrance or park driveway, road or street for park purposes.''

We see that the power vested in the board of park commissioners as to regulating, managing and controlling this avenue, after it assumes control thereof, is again almost unlimited. It may say under this act, what kind of travel may pass along Euclid avenue; what kind of conveyances may be used. Any and all kinds of parades may be prohibited by the board of park commissioners. Advertising, that is intended to call together the people upon the avenue, may be by them prohibited. They may agree to remove, with the consent of the majority of the frontage on such avenue, a great system of street railways that are established and to-day pass over the major portion of the avenue sought to be thus taken from the control of the city. They may remove from the street all the stone paving now thereon; they may require a different paving and, by so doing, they may interfere with the ingress and egress to private property. They may, by the restricting of traffic upon the avenue, absolutely defeat the further prospect of this property for business, as well as materially interfere with the use of business property that already is, and has been for years established

[COPYRIGHT, 1899, BY CARL G. JAHN.]

Reprinted on account of errors.)

along this great thoroughfare.

And it is no answer to all this, to say that they will permit heavy traffic to come upon the avenue at the street nearest to the objective point, or that the rights of the abutting property owners will not be interfered with because he will still have access to his property, both for private and business purposes. How can this be, if we were to assume for one moment that the board of park commissioners would thus adjust and arrange the control of this street with reference to both private and business interests? For instance, a piece of property on the corner of Euclid avenue and some street that leads to the north, is not paved, and at some seasons of the year becomes almost impassible as many of the streets do that are not paved or macadamized. If the board of park commissioners were to go so far as contended by counsel for the city, they would or might permit heavy traffic to come upon the avenue at the street adjacent to the property where they sought to deliver their goods, wares, or merchandise. Suppose that street be an unpaved street? In the winter or spring of the year, the producer seeking to vend his goods to a business concern located upon the corner of such street and the avenue so that he can reach that business concern by no other route, but can obtain for his goods the same price from business concern easy of access by passing only over paved streets to deliver—under such circumstances, the business concern, thus located, receives merchandise or goods or products of any kind at a high price necessarily, or its goods must be carried away from its factory at a greater cost than they would be if the avenue under the control of the board of park commissioners was "open and free to all the people of the world," as said by Judge Dillon, and maintained and kept for the traveling public's benefit, paved, and made easy of ingress and egress.

Again, how much interference must there be with business concerns on the avenue? Take, for instance, the Euclid and Wilson avenue crossings. Immense business is carried on here. Goods of all kins pass to and from the factories and business concerns abutting on Euclid avenue. Must all the out-put and all the delivering from any and all factories and stores, thus established and doing business, leave the avenue, leave this great thoroughfare, at the first street to the right or to the left, and be inconvenienced by driving blocks out of their way in order to deliver goods to a certain point or receive them from a certain point?

The change would be marvelous— would be an entire revolution of the immense traffic that is carried on today on Euclid avenue at different intersecting streets from Brownell street to Wade Park Boulevard or avenue.

All these interests have grown up, these property rights have attached, existed and are vested under a statute giving the control of this avenue to an agency, to-wit: the municipal power that has no authority to dictate and say who may or may not travel upon this great thoroughfare, so long as they bring not upon it a nuisance of some kind or character.

The board of park commissioners may, on the other hand, say what may be carried over this great thoroughfare, and what shall not be carried over it.

Again, all the way from Case avenue to Wade park entrance are vast and expensive apartment houses, built expressly for the accommodation of large numbers under one roof, both of families and individuals. These properties were constructed and built at great expense, with a fixed right not only in the street, but with a living and continuing contract with the city of Cleveland for transportation to and from and along and in front of all these immense structures by a great street railway system. And yet, put this street or avenue under the control of the board of park commissioners, and they may actually, with the consent of a majority of the foot front, take from the people occupying such premises, and from the owners thereof a vested right, a property right in the method and means of transportation to and from all parts

of the city. The present municipal power could do no such thing.

Is it to be said that this, in no event or to no extent, would affect a vested right of an abutting property owner? I can hardly conceive of a greater source of damage to the property owner who has improved his lot with a large apartment house, than to take from him the right of street railway transportation as it now exists. It would mean practically the taking away from him of all his tenants and leaving in a large degree, in the judgment of the court and the experience of us all, his property upon his hands almost entirely without tenants, though thousands of dollars are invested therein.

I only cite this instance, and only compare these statutes, and only speak of the marvelous change, and the difference in the authority vested by the state of Ohio in the two controlling agencies of this great thoroughfare, as tending to show that damage must follow to some extent from such act on the part of the city, on the part of the state and the board of park commissioners, and if damage arises, if any property right of the abutting property owner is injured, then this demurrer to the first defense must, by the court, be overruled.

I do not mean to intimate the amount of damage; but that damage will follow and must flow from the transfer of the control of this avenue, from the municipal corporation to that of the board of park commissioners, is, in the mind of the court, beyond question.

Being, therefore, clearly of the opinion that if the control of Euclid avenue, if changed from that of the present controlling authority to that of the board of park commissioners, property rights of the abutting property owners will be affected and injured, much of the property lessened in value while some may be enhanced, —being of this opinion, and that damage will follow and must be assessed, the constitutional right of the property owners being that they shall have the amount ascertained and determined by a jury, the demurrer to the fifth defense is, therefore, overruled, and exception noted in each instance to the holding of the court.

Minor G. Norton and Phillips & Phillips, for Plaintiff.

D. H. Tilden, Hamilton & Hamilton, Kline, Cart, Tolles & Goff, for Defendants.